1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
_____
                                                             )
ISABELLE BICHINDARITZ,                      )        No. C10-1371RSL
                                                             )
8                                    Plaintiff,           )
                                                             )
9            v.                                             )        ORDER DENYING DEFENDANT'S
                                                             )        MOTION FOR SUMMARY
10   UNIVERSITY OF WASHINGTON,        )        JUDGMENT REGARDING
                                                             )        RETALIATION CLAIM
11                                   Defendant.       )
_____)
12

13        This matter comes before the Court on "Defendant's Motion for Summary

14   Judgment Dismissal of Plaintiff's Retaliation Claim."  Dkt. # 22.  Dr. Isabelle Bichindaritz, an

15   assistant professor in Computing and Software Systems in the Institute of Technology at the

16   University of Washington Tacoma, brought this action alleging that the University violated Title

17   VII of the Civil Rights Act by discriminating against her on the basis of sex and retaliating

18   against her for a complaint she filed with the University Ombudsman.  The University seeks

19   summary judgment on plaintiff's retaliation claim.

20

21        Summary judgment is appropriate when, viewing the facts in the light most

22   favorable to the nonmoving party, the record shows that "there is no genuine issue as to any

23   material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.

24   Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-

25   moving party fails to designate, by affidavits, depositions, answers to interrogatories, or

26

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT REGARDING RETALIATION CLAIM

admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," however. Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

### FACTUAL BACKGROUND

The University employs an "up or out" system pursuant to which assistant professors must be considered for tenure no later than their sixth year of employment.  If the decision is negative, the employment terminates after the next academic year.  The tenure process involves a number of different levels of review which generate at least four written recommendations regarding the award of tenure.  Ultimately the tenure file, including materials chosen by the candidate and the recommendations, is forwarded to the University Provost for the final decision.

Despite receiving advice to the contrary, plaintiff chose to initiate an early tenure review during the 2005-2006 academic year.  The first three levels of review resulted in reports that questioned plaintiff's teaching effectiveness and recommended that her tenure application be postponed.  Decl. of Seth J. Berntsen (Dkt. # 23), Exs. 14-16.  The Director of the Institute of Technology, Dr. Orlando Baiocchi, provided the third level of review, concluding that "[t]he candidate presents an outstanding case for tenure and promotion from the perspective [of]

research and a strong one from the perspective of service," but that "she has not yet established a sufficient case from the perspective of teaching to warrant overall recommendation for promotion and tenure at this time." Id. Ex. 16 at 3. The application went no further.

In October 2006, plaintiff triggered the University's alternative dispute mechanism to resolve a conflict between herself and the Director of her program, Dr. Baiocchi. It is undisputed that Dr. Baiocchi knew of the October 2006 request for mediation when plaintiff's mandatory tenure review occurred in 2007-2008. Dr. Baiocchi attended the meeting of the senior faculty in which Dr. Bichindaritz' application was discussed and drafted the "Voting Faculty's Recommendation." Although Dr. Baiocchi reported that two out of seven faculty supported tenure for plaintiff (Decl. of Seth J. Berntsen (Dkt. # 23), Ex. 22.), three of the voting faculty stated in deposition that they voted in plaintiff's favor (Id. Ex. 23 at 79, Ex. 32 at 94; Decl. of Frederick H. Gautschi, III (Dkt. # 42, Ex. 7 at 48)). In his "Program Director's Recommendation," Dr. Baiocchi summarized criticisms that had been leveled against Dr. Bichindaritz in the past, bluntly rebutted statements Dr. Bichindaritz had made during the tenure review process, and took aim at her perceived lack of collegiality. Decl. of Seth J. Berntsen (Dkt. # 23), Ex. 24. Many, if not most, of Dr. Baiocchi's criticisms had already been raised by others, but the November 2007 evaluation reveals a deeper level of frustration with Dr. Bichindaritz than was apparent in earlier reviews. The increased frustration reflected in the recommendation may have been the normal (and lawful) result of long-standing tensions in plaintiff's working relationship with Dr. Baiocchi[1] and/or his belief that plaintiff's response to the Voting Faculty's Recommendation was inaccurate and misleading. On the other hand, a

---

[1] Plaintiff apparently absented herself from the interview process that brought Dr. Baiocchi to the Institute of Technology, thereby offending him even before they started working together. The situation did not improve after Dr. Baiocchi was hired: "I scheduled meetings with every single faculty and staff and went to their own offices to introduce myself, to ask what issues they have and so forth. It took me almost six months to get the honor of being received by Dr. Bichindaritz and I felt kind of bad about that, but, you know, that's what it was." Opposition (Dkt. # 41) at 2 (the record citation provided by plaintiff is incorrect).

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT REGARDING RETALIATION CLAIM -3-

reasonable factfinder could conclude that the mistaken faculty vote count and the pointed rebuttal and criticisms leveled in November 2007 were prompted by plaintiff's complaint to the University Ombudsman in October 2006.  This possibility cannot be ruled out on the current record, especially when Dr. Baiocchi twice mentions the mediation in his written recommendation.  In support of his contention that plaintiff's perceived lack of collegiality had been raised numerous times in the past, Dr. Baiocchi noted that:

> The issue was also addressed by the University of Washington's appropriate personnel in response to Dr. Bichindaritz's request for mediation.  Furthermore, during this mediation process, it was suggested to Dr. Bichindaritz that she request[] a postponement of this review for tenure and promotion in order to address the collegiality issue.  She refused to consider that option . . .

Id. Ex. 24 at 3-4.  Dr. Baiocchi also used the mediation itself as evidence that plaintiff was uncooperative and unable to work with others at the Institute:

> It also seems unlikely that the pattern of permanent complain[t]s will ever change. For example, let's look at Dr. Bichindaritz['s] requests for support.  From May 2004 to August 2007 we provided her with funds adding to $50,073.69 in response to her needs for travel and materials for her classes; out of this amount, as much as $15,958.56 was spent on travel and conference fees. . . . That is more than five times the amount the typical UWT faculty receives per year for the same purposes. Yet, she still found grounds to complain, including to the mediator in Seattle, that we were not doing enough to support her research.

Id., Ex. 24 at 4.

Ultimately, the Provost was presented with a tenure file that contained recommendations both in favor and against tenure.  The initial review committee and the Vice Chancellor for Academic Affairs, Dr. Beth Rushing, recommended tenure for plaintiff.  Decl. of Seth J. Berntsen (Dkt. # 23), Exs. 19 and 25.  The voting faculty committee and the Program Director, Dr. Baiocchi, both voted against tenure.  Id. Exs. 22 and 24.  University Provost Phyllis M. Wise reviewed plaintiff's tenure file, conferred with Dr. Rushing and representatives of the Chancellor's office, and concluded that "postpone is the best we can do.  In all honesty, the long

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT REGARDING RETALIATION CLAIM -4-

record of poor teaching is so overwhelming that I don't see how it can be corrected in 1 year.  It should be really rare that we overrule a negative vote of the faculty and chair/director who know her best."   Decl. of Phyllis M. Wise (Dkt. # 24), Ex. A at Ex. 2.  In May 2008, Dr. Bichindaritz was informed that her tenure review would be postponed for a year based on:

- Concerns regarding teaching effectiveness as reflected in a pattern of low student and peer evaluations.
- Concerns regarding her collegiality and the untoward effect on the Institute's teaching, research and service activities.
- A need for clarity with regard to the significance of her scholarly achievements and as to which publications are primary literature in peer-reviewed journals.

Seth J. Berntsen (Dkt. # 23), Ex. 28.

During the 2008-2009 academic year, both the initial review committee and the senior faculty committee voted in favor of granting plaintiff tenure, by votes of 4-0 and 4-3 respectively.  Seth J. Berntsen (Dkt. # 23), Exs. 29 and 30.  Dr. Baiocchi, however, felt that the concerns identified by Provost Wise had not been "properly addressed by the candidate and certainly [had not been] resolved" and recommended that tenure be denied.  Id. Ex. 36.  His January 2009 report, while more temperate than the November 2007 document, is significantly more negative than the Voting Faculty Recommendation, raises issues not mentioned in the lower level reviews, and rejects Dr. Bichindaritz' rebuttal arguments as "not acceptable" and/or "totally false."  Id.  The University of Washington Tacoma Faculty Council then completed its own review of plaintiff's tenure file.  The Council specifically rebutted some of Dr. Baiocchi's criticisms by interpreting the same data differently and voted unanimously in favor of granting tenure.  Id. Ex. 37.

In March 2009, Dr. Rushing performed a thorough and independent review of plaintiff's tenure file in order to evaluate Dr. Bichindaritz' scholarship, teaching, and service contributions.  Seth J. Berntsen (Dkt. # 23), Ex. 38.  Although she refers to Dr. Baiocchi's report, her analysis of the file goes far deeper than his, the factors considered and the

conclusions drawn are clearly her own, and she rejects Dr. Baiocchi's judgments regarding the import of certain data if they are inconsistent with her own conclusions.  Dr. Rushing ultimately recommended that tenure be denied on two grounds.  First, she concludes that the concerns regarding Dr. Bichindaritz' teaching effectiveness that had been raised since 2005 had not been resolved.  Second, Dr. Rushing states that "Dr. Bichindaritz has not worked effectively with her colleagues in the Institute of Technology, and there is no indication of improved collegial relations over time."  Id. Ex. 38 at 4.  It appears that three of the most recent reviews cited by Dr. Rushing in support of this second conclusion were drafted by Dr. Baiocchi.  Id. Ex. 38 at 4-5.[2] Provost Wise subsequently "consider[ed] the candidate's record as a whole, and [balanced] the votes or recommendation of the participants in the review process" before denying Dr. Bichindaritz tenure.  Id. Ex. 39; Decl. of Phyllis M. Wise (Dkt. # 24) at ¶ 4.  Provost Wise specifically states that Dr. Baiocchi's recommendation was not "the deciding factor."  Id.

### DISCUSSION

In order to survive summary judgment, plaintiff must offer evidence that gives rise to an inference of unlawful retaliation.  She may do so by providing evidence of retaliatory animus or, in the absence of direct or circumstantial evidence of unlawful conduct, by satisfying the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Here, plaintiff has provided evidence from which a reasonable factfinder could conclude that Dr. Baiocchi's post- October 2006 reviews and tenure recommendations were colored by retaliatory animus.  The Court readily acknowledges that there are a number of plausible - if not probable - explanations for Dr. Baiocchi's denial recommendations that have nothing to do with plaintiff's protected activity:[3]  concerns regarding plaintiff's commitment to teaching had been

---

[2]  The Court has been unable to find, and therefore identify the author of, the June 2007 annual review referenced in Dr. Rushing's third bullet point.

[3]  For purposes of this motion, the Court assumes, as defendant has done, that plaintiff's initiation of the Ombudsman process in October 2006 is protected activity under Title VII.

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT REGARDING RETALIATION CLAIM  -6-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

raised for a number of years, and her inability or unwillingness to function with her colleagues as part of a team would give anyone pause when deciding whether to grant tenure.  Nevertheless, there are enough indications in the record that plaintiff's contact with the Ombudsman rankled Dr. Baiocchi to raise an inference of retaliatory motive.  In these circumstances, the question should be resolved by the factfinder at trial, not by the Court as a matter of law.  Lyons v. England, 307 F.3d 1092, 1113 (9th Cir. 2002).  For purposes of evaluating causation, the Court will assume that Dr. Baiocchi's negative reviews and recommendations were motivated by plaintiff's initiation of the Ombudsman process in October 2006.

The question then becomes whether Dr. Baiocchi's presumed animus is causally related to the adverse employment action at issue, namely the denial of tenure.  It was Provost Wise, after all, who ultimately made the decision to deny plaintiff tenure.  Defendant argues that the independent inquiries conducted by both Dr. Rushing and Provost Wise severed the causal link between Dr. Baiocchi's presumed animus and the adverse employment action, such that the final decision cannot be considered retaliatory.  In the Ninth Circuit, a subordinate's animus can be "imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process."  Poland v. Chertoff, 494 F.3d 1174, 1182 (9th Cir. 2007).  If plaintiff is able to convince the factfinder that Dr. Baiocchi's unfavorable reviews and recommendations were the result of retaliatory animus, the factfinder could also conclude that his participation in the review process tainted the final tenure decision. The fact that there were two levels of review above Dr. Baiocchi is not a talisman against a Title VII action where both reviewers considered Dr. Baiocchi's statements, anecdotes, and criticisms when evaluating plaintiff's tenure application.  Dr. Rushing seems to have relied heavily on Dr. Baiocchi's opinions regarding plaintiff's collegiality in reaching her decision.  As for Provost Wise, during the 2007-2008 tenure review process, she expressed her opinion that the University should rarely overrule the votes of individuals like the Program Director who know the

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT REGARDING RETALIATION CLAIM -7-

candidate best.  There is no reason to assume that she changed her mind the following year.  The Court finds that plaintiff has raised a genuine issue of fact regarding the causal link between her protected activity and the denial of tenure.

Because plaintiff has established a *prima facie* case of retaliation under Title VII, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action.  Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011).  Defendant has produced a number of reviews questioning Dr. Bichindaritz' commitment to teaching, her teaching effectiveness, and her ability to work with her colleagues for the betterment of the program.  Each defect could justify the University's refusal to make Dr. Bichindaritz a permanent member of its faculty, and none is related to her protected activity.

Once the employer provides a legitimate, non-retaliatory explanation for the adverse employment decision, "plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext.  Only then does the case proceed beyond the summary judgment stage."  Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000) (citations omitted).  Plaintiff's burden is one of persuasion, not proof.  She need not come forward with additional evidence at the third step of the McDonnell Douglas analysis:  if the evidence that establishes a *prima facie* case continues to support an inference of unlawful retaliation despite defendant's explanation, the factfinder must resolve the issue.  Lyons, 307 F.3d at 1112-13 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000), for the proposition that "the factfinder may infer 'the ultimate fact of intentional discrimination' without additional proof once the plaintiff has made out her prima facie case if the factfinder believes that the employer's proffered nondiscriminatory reasons lack credibility.").  Because this is a summary judgment motion, the facts must be viewed in the light most favorable to plaintiff when determining whether there is a genuine issue of fact to be decided at trial.  Drawing all inferences in plaintiff's favor, there is at least the possibility that Dr. Baiocchi's position as plaintiff's Program Director, his specific criticisms regarding her lack of collegiality,

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT REGARDING RETALIATION CLAIM  -8-

and his strong recommendation against awarding tenure affected both Dr. Rushing's and Provost Wise's decisions. Of course, one could also conclude that Dr. Rushing would have independently recommended denial of tenure based on her own thorough review of the tenure file and that Provost Wise would have reached the same conclusion even in the absence of any retaliatory statements by Dr. Baiocchi. Because this issue cannot be decided as a matter of law, a trial is necessary.

Plaintiff has produced evidence which, when viewed in a very favorable light, gives rise to an inference of retaliatory motive and causation. Her retaliation claim therefore survives summary judgment. Defendant's motion (Dkt. # 22) is DENIED.

Dated this 19th day of September, 2011.

Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT REGARDING RETALIATION CLAIM  -9-